IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MIGUEL MOLINA,** | : | Civil No. 3:23-CV-1111 |
| **Plaintiff,** | : | **(Chief Judge Brann)** |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| **J. RIVELLO, et al.,** | : | |
| **Defendants.** | : | |

# MEMORANDUM OPINION

## I.   Statement of Facts and of the Case

This is a civil rights action brought by Miguel Molina, a state inmate. Presently before the court is a motion filed by Molina which seeks to compel the discovery of certain prison records relating to Molina's prison transfer, an issue which lies at the heart of this litigation. (Doc. 21).

With respect to this discovery issue the pertinent facts can be simply stated. As this court has previously explained:

> On June 30, 2022, *pro se* prisoner, Molina, initiated this action pursuant to 42 U.S.C.§ 1983 against Defendants for alleged retaliatory conduct in violation of the First Amendment. (Doc. 1-1). In retaliation for his filing of grievances and civil rights complaints challenging the conditions of his confinement, Molina alleges Defendants placed him in cells "contaminated with mold, rust, asbestos, and corrosion," a cell with a leaking, broken toilet, and eventually the restrictive housing unit ("RHU"). (Doc. 1-1, ¶¶ 16, 17, 21, 40). Molina alleges he was further punished by being transferred from SCI-Huntingdon to the

1

> Pennsylvania Department Corrections Facility at Forest. (Doc. 1-1, ¶ 40; Doc. 6, at 5). Molina alleges that Defendants fabricated misconduct reports against him to implement these transfers. (Doc. 1-1, ¶¶ 21, 28). "Extreme hardships" followed because of these placements. (Doc. 1-1, ¶ 40). For relief, Molina requests declaratory relief, injunctive relief in the form of immediate release from the RHU and cessation of all retaliatory acts, compensatory and punitive damages, and court costs. (Doc. 1-1, ¶¶ A-F).

(Doc. 9).

Currently, the case is proceeding on Molina's First Amendment Retaliation Claim concerning Molina's allegedly retaliatory prison transfer, (Doc. 10), and the parties have engaged in discovery relating to that claim. As part of this discovery, Molina has propounded requests for production of documents which seek vote sheets, documents recording the rationale for this transfer decision, along with pertinent emails discussing and addressing the decision to transfer the plaintiff to another institution. The defendants have declined to produce these records citing security, confidentiality, and privilege concerns. Thus, the defendants' principal objections to these discovery demands relate to claims of privilege, rather than disputes regarding potential relevance. Notably, however, this response is not accompanied by any agency declaration assessing these concerns in a fact-specific fashion.

With the parties' positions framed in this fashion, Molina has moved to compel the production of these records. (Doc. 21). This motion is fully briefed and is, therefore, ripe for resolution.

For the reasons set forth below, the motion will be denied in part and granted in part as follows: Molina's request for wholesale disclosure of these documents is DENIED. However, we will also decline the defendants' request to wholly preclude access to this potentially relevant information and instead direct the defendants to submit these documents to the court for its *in came*ra review. By acting in this fashion, we can reconcile the interests of inmate-plaintiff and corrections officials by rejecting broadly framed requests for access to prison records, while conducting an *in camera* review of those records which may be relevant to the claims and defenses asserted here. Cramer v. Bohinski, No. 1:22-CV-583, 2023 WL 4764002, at *4 (M.D. Pa. July 26, 2023), reconsideration denied, No. 1:22-CV-583, 2023 WL 5672177 (M.D. Pa. Sept. 1, 2023). This review will allow us to ascertain the relevance of various records, reconcile these claims of relevance with the significant security concerns voiced by the defense, and make fully informed decisions regarding whether, and in what format, any documents may be released.

II. **Discussion**

　　A. **Guiding Principles**

Several basic guiding principles inform our resolution of the instant discovery

3

dispute. At the outset, the scope of what type of discovery may be compelled is defined by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment. Thus, it has long been held that decisions regarding motions to compel are "committed to the sound discretion of the district court." DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974). Similarly, issues relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the Court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Thus, a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This

far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United States, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than *de novo* standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion is guided, however, by certain basic principles. Thus, at the outset, it is clear that Rule 26's definition of that which can be obtained through discovery reaches any nonprivileged matter that is relevant to any party's claim or defense, and valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all relevant information, a concept which is not confined to admissible evidence but is also defined in the following terms:

"Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Rather, Rule 26 states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." This concept of relevance is tempered, however, by principles of proportionality. Thus, we are now enjoined to also consider whether the specific discovery sought is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Thus, it has been said that the amended rule 'restores the proportionality factors to their original place in defining the scope of discovery.'" Fassett v. Sears Holdings Corp., 319 F.R.D. 143, 150 (M.D. Pa. 2017) (quoting Wertz v. GEA Heat Exchangers Inc., No. 1:14-CV-1991, 2015 WL 8959408, at *2 (M.D. Pa. Dec. 16, 2015)).

    Further, there are factors unique to prison litigation that inform the exercise of our discretion when addressing inmate discovery issues. In a prison setting, inmate requests for information which affects staff safety can raise profound security concerns, and implicate a legitimate governmental privilege, a governmental privilege which acknowledges a governmental need to confidentiality of certain data

6

but recognizes that courts must balance the confidentiality of governmental files against the rights of a civil rights litigant by considering:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intra-departmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiffs case.

Cramer, 2023 WL 4764002, at *3.

Likewise, discovery requests, like those propounded here, which seek information regarding prison institutional decision-making may implicate another privilege, the deliberative process privilege. The deliberative process privilege allows the government to withhold documents "containing 'confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice.'" Redland Soccer Club, Inc. v. Dep't of Army of United States, 55 F.3d 827, 853 (3d Cir. 1995) (citations omitted). In order to invoke this privilege, "the head of the governmental body must (1) personally review the purported privileged documents; (2) identify and specifically describe the documents; and (3) give 'precise and certain reasons,'

7

usually through an affidavit, for the privilege's applicability." Beckwith v. Blair Cty., 2019 WL 343248, at *6 (W.D. Pa. Jan. 28, 2019) (quoting United States v. O'Neill, 619 F.2d 222, 226 (3d Cir. 1980)).

Applying these privileges, in the past courts have declined to compel production of prison vote sheets or other related documents reflecting the deliberative process as it related to a particular inmate's placement, transfer, or programming, reasoning that the release of this information poses a legitimate security concern for the institution and its staff. See Naranjo v. T. Walter, 2021 WL 4226062, at * 5 (M.D. Pa. Sept. 16, 2021) (finding that the deliberative process privilege applied and denying a motion to compel vote sheets); Walker v. Regan, 2019 WL 687884, at *3 (E.D. Pa. Feb. 15, 2019) (declining to compel production of vote sheets because they "are quintessential examples of documents protected by the deliberative process privilege"); Mearin v. Folino, 2012 WL 4378184, at *4 (W.D. Pa. Sept. 24, 2012) (denying a motion to compel DC-46 vote sheets because the vote sheets, and "particularly the names of staff members who signed them, are privileged and confidential").

Further, in considering discovery requests like those propounded here, we are mindful that a party moving to compel discovery bears the initial burden of proving the relevance of the requested information. Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D. Pa. 2001). Once that initial burden is met, the party

8

resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery is either privileged; does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1); or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D. Kan. 2009).

Finally, oftentimes in making these determinations we must weigh the relevance of inmate discovery demands against legitimate institutional security concerns. Such evaluations typically cannot be made in the abstract. When factual context is necessary to informed decision making, we have a procedural tool at our disposal: we may direct that disputed material be submitted to the court for its *in camera* review.

> In charting this path, we reconcile the interests of inmate-plaintiff and corrections officials by rejecting broadly framed requests for access to prison records, see Paluch v. Dawson, No. 06-1751, 2007 WL 4375937, *4–5 (M.D. Pa. Dec. 12, 2007), while conducting an *in camera* review of those records which may be relevant to more narrowly tailored discovery demands. Paluch v. Dawson, No. 06-175, 2008 WL 2785638, *3 (M.D. Pa. July 17, 2008). See Torres v. Harris, No. 4:17-CV-1977, 2019 WL 265804, at *5 (M.D. Pa. Jan. 18, 2019).

Cramer, 2023 WL 4764002, at *4.

These principles guide our resolution of this motion to compel.

## B. <ins>The Motion to Compel Will be Granted in Part and Denied in Part.</ins>

In the instant case, content and context are crucial to an informed resolution of this discovery dispute. At the outset, we cannot ascertain the full relevance of the requested evidence without some sense of its content. To be sure, the gravamen of this case is Molina's assertion that prison officials transferred him in retaliation for his constitutionally protected conduct. With Molina's claims framed in this fashion, the reasons and justification for his prison transfer are potentially matters of critical significance in this case. The documents that Molina seeks could speak directly to this issue of why he was transferred and could do so in ways which either support—or wholly undermine—his claims depending upon their content. However, without some ability to assess the content of the records we cannot reach any reasoned assessment of these questions of relevance.

In the same vein, the current record does not allow us to make any final determinations regarding the potential security implications of these disclosures. Nor can we evaluate the degree to which some documents may be cloaked in the deliberative process privilege. On this score, we note that the privilege claim is made in the abstract, without any reference to the content of the records, and lacks a legally essential element; namely, a declaration indicating that "the head of the governmental body . . . (1) personally review[ed] the purported privileged documents; (2) identif[ied] and specifically describe[d] the documents; and (3) g[a]ve 'precise and

certain reasons,' usually through an affidavit, for the privilege's applicability." Beckwith, 2019 WL 343248, at *6.

Simply put, more is needed here. Therefore, we will follow the path we have chosen in the past and direct the defendants to submit these documents to the court for its *in came*ra review. By acting in this fashion, we can reconcile the interests of inmate-plaintiff and corrections officials by rejecting broadly framed requests for access to prison records, while conducting an *in camera* review of those records which may be relevant to the claims and defenses asserted here.  Cramer, 2023 WL 4764002, at *4. This review will allow us to ascertain the relevance of various records, reconcile these claims of relevance with the significant security concerns voiced by the defense, and make fully informed decisions regarding whether, and in what format, any documents may be released.

An appropriate order follows.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

May 8, 2024.