IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MIGUEL MOLINA,** | : | Civil No. 3:23-CV-1111 |
| Plaintiff, | : | (Chief Judge Brann) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **J. RIVELLO, et al.,** | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

**I.    Statement of Facts and of the Case**

This is a civil rights action brought by Miguel Molina, a state inmate. Presently before the court is a motion filed by Molina which requests that we complete an *in camera* review of certain prison records relating to Molina's prison transfer, an issue which lies at the heart of this litigation. (Doc. 41).

With respect to this discovery issue the pertinent facts can be simply stated. As this court has previously explained:

> On June 30, 2022, *pro se* prisoner, Molina, initiated this action pursuant to 42 U.S.C.§ 1983 against Defendants for alleged retaliatory conduct in violation of the First Amendment. (Doc. 1-1). In retaliation for his filing of grievances and civil rights complaints challenging the conditions of his confinement, Molina alleges Defendants placed him in cells "contaminated with mold, rust, asbestos, and corrosion," a cell with a leaking, broken toilet, and eventually the restrictive housing unit ("RHU"). (Doc. 1-1, ¶¶ 16, 17, 21, 40). Molina alleges he was further punished by being transferred from SCI-Huntingdon to the

1

> Pennsylvania Department Corrections Facility at Forest. (Doc. 1-1, ¶ 40; Doc. 6, at 5). Molina alleges that Defendants fabricated misconduct reports against him to implement these transfers. (Doc. 1-1, ¶¶ 21, 28). "Extreme hardships" followed because of these placements. (Doc. 1-1, ¶ 40). For relief, Molina requests declaratory relief, injunctive relief in the form of immediate release from the RHU and cessation of all retaliatory acts, compensatory and punitive damages, and court costs. (Doc. 1-1, ¶¶ A-F).

(Doc. 9).

Currently, the case is proceeding on Molina's First Amendment retaliation claim concerning Molina's allegedly retaliatory prison transfer, (Doc. 10), and the parties have engaged in discovery relating to that claim. As part of this discovery, Molina propounded requests for production of documents which seek vote sheets, documents recording the rationale for this transfer decision, along with pertinent emails discussing and addressing the decision to transfer the plaintiff to another institution. The defendants declined to produce these records citing security, confidentiality, and privilege concerns. Thus, the defendants' principal objections to these discovery demands relate to claims of privilege, rather than disputes regarding potential relevance. With the parties' positions framed in this fashion, Molina moved to compel the production of these records. (Doc. 21). We then entered an order which provided that Molina's request for wholesale disclosure of these documents was DENIED. However, we also declined the defendants' request to wholly preclude access to this potentially relevant information and instead directed the defendants to

submit these documents to the court for its *in camera* review. (Docs. 34, 35). The defendants complied with this request, (Doc. 39), and Molina has now filed a pleading, styled as a motion for status conference, which seeks an update on our *in camera* review. (Doc. 41).

Having conducted this review, we note that only one document, a transfer vote slip, has arguable relevance to Molina's claims. (Doc. 39-1 at 2). However, the relevance of this document is marginal since it indicates that security concerns related to Molina's May 2022 disciplinary proceedings motivated the transfer decision. Further, given the nature of this entry we believe that its disclosure to Molina, an inmate who was convicted of murder and has an institutional history marked by repeated threats and violence, presents significant security concerns which justify its non-disclosure. Therefore, this motion is GRANTED, in part, in that we are updating Molina on the results of our *in camera* review, but DENIED to the extent that Molina seeks disclosure of these sensitive records.

## II. Discussion

Several basic guiding principles inform our resolution of the instant discovery dispute. At the outset, the scope of what type of discovery may be compelled is defined by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides as follows:

Unless otherwise limited by court order, the scope of discovery is as

> follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment. Thus, it has long been held that decisions regarding motions to compel are "committed to the sound discretion of the district court." DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974). Similarly, issues relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the Court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Thus, a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585

4

> (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United States, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than *de novo* standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion is guided, however, by certain basic principles. Thus, at the outset, it is clear that Rule 26's definition of that which can be obtained through discovery reaches any nonprivileged matter that is relevant to any party's claim or defense, and valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all relevant information, a concept which is not confined to admissible evidence but is also defined in the following terms: "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Rather, Rule 26 states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." This concept of relevance is tempered, however, by principles of

5

proportionality. Thus, we are now enjoined to also consider whether the specific discovery sought is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Thus, it has been said that the amended rule 'restores the proportionality factors to their original place in defining the scope of discovery.'" Fassett v. Sears Holdings Corp., 319 F.R.D. 143, 150 (M.D. Pa. 2017) (quoting Wertz v. GEA Heat Exchangers Inc., No. 1:14-CV-1991, 2015 WL 8959408, at *2 (M.D. Pa. Dec. 16, 2015)).

Further, there are factors unique to prison litigation that inform the exercise of our discretion when addressing inmate discovery issues. In a prison setting, inmate requests for information which affects staff safety can raise profound security concerns, and implicate a legitimate governmental privilege, a governmental privilege which acknowledges a governmental need to confidentiality of certain data but recognizes that courts must balance the confidentiality of governmental files against the rights of a civil rights litigant by considering:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or

6

evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intra-departmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiffs case.

Cramer v. Bohinski, No. 1:22-CV-583, 2023 WL 4764002, at *3 (M.D. Pa. July 26, 2023), reconsideration denied, No. 1:22-CV-583, 2023 WL 5672177 (M.D. Pa. Sept. 1, 2023).

Likewise, discovery requests, like those propounded here, which seek information regarding prison institutional decision-making may implicate another privilege, the deliberative process privilege. The deliberative process privilege allows the government to withhold documents "containing 'confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice.'" Redland Soccer Club, Inc. v. Dep't of Army of United States, 55 F.3d 827, 853 (3d Cir. 1995) (citations omitted). In order to invoke this privilege, "the head of the governmental body must (1) personally review the purported privileged documents; (2) identify and specifically describe the documents; and (3) give 'precise and certain reasons,' usually through an affidavit, for the privilege's applicability." Beckwith v. Blair Cty., 2019 WL 343248, at *6 (W.D. Pa. Jan. 28, 2019) (quoting United States v. O'Neill, 619 F.2d 222, 226 (3d Cir. 1980)).

Applying these privileges, in the past courts have declined to compel production of prison vote sheets or other related documents reflecting the deliberative process as it related to a particular inmate's placement, transfer, or programming, reasoning that the release of this information poses a legitimate security concern for the institution and its staff. See Naranjo v. T. Walter, 2021 WL 4226062, at * 5 (M.D. Pa. Sept. 16, 2021) (finding that the deliberative process privilege applied and denying a motion to compel vote sheets); Walker v. Regan, 2019 WL 687884, at *3 (E.D. Pa. Feb. 15, 2019) (declining to compel production of vote sheets because they "are quintessential examples of documents protected by the deliberative process privilege"); Mearin v. Folino, 2012 WL 4378184, at *4 (W.D. Pa. Sept. 24, 2012) (denying a motion to compel DC-46 vote sheets because the vote sheets, and "particularly the names of staff members who signed them, are privileged and confidential").

Further, in considering discovery requests like those propounded here, we are mindful that a party moving to compel discovery bears the initial burden of proving the relevance of the requested information. Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D. Pa. 2001). Once that initial burden is met, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery is either privileged; does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1); or is of such

marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D. Kan. 2009).

Applying these principles, we note at the outset that the disclosures sought by Molina implicate substantial security concerns. These concerns are driven, in large measure, by Molina's own conduct. Miguel Molina is a convicted killer, whose institutional history is marked by repeated threats of violence and other misconduct. Simply put, we agree with the defendants that placing confidential information identifying decision-makers, investigative techniques, and potential sources of information in Molina's hands, given his own violent history, presents an unacceptable risk to institutional security. It also would expose prison deliberative processes in way that could permit manipulation of those processes. Thus, the governmental security, confidentiality, and deliberate process privileges plainly apply here, and the defense properly invokes those privileges.

Moreover, Molina has not overcome these legitimate institutional privilege concerns since the information he seeks has little additional relevance or probative value beyond what is already known by the parties. The gravamen of this case is Molina's assertion that prison officials transferred him in retaliation for his constitutionally protected conduct. With Molina's claims framed in this fashion, the articulated reasons and justification for his prison transfer are based upon security

concerns arising out of the disciplinary citation lodged against Molina in the Spring of 2022. Nothing in the documents, however, supports Molina's claim that those concerns were wholly pretextual and masked a retaliatory intent. Therefore, as to the issue of the defendants' intent, a question which is central to this retaliation claim, this document does not materially add to the quantum of proof in any way. It simply restates that defendants' position that they acted based upon security concerns, a contention that Molina disputes based upon what he alleges were statements made privately to him.

Given the limited relevance of this notation, and the significant, substantial and well-justified security concerns that would arise from its disclosure to an inmate with an extensive history of violence and institutional misconduct, in the exercise of our discretion we will decline to order this information released.

An appropriate order follows.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: February 6, 2025

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MIGUEL MOLINA,** | : | Civil No. 3:23-CV-1111 |
| **Plaintiff,** | : | (Chief Judge Brann) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **J. RIVELLO, et al.,** | : | |
| **Defendants.** | : | |

## ORDER

AND NOW this 6th day of February 2025, in accordance with the accompanying Memorandum Opinion, IT IS ORDERED THAT, the plaintiff's motion for status conference which seeks an update on the status of our *in camera* review of certain documents, (Doc. 41), is GRANTED, in part, in that we are updating Molina on the results of our *in camera* review, but DENIED to the extent that Molina seeks disclosure of these sensitive records.

*s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
